**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 28, 2026

The Honorable Robert W. Lehrburger
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re: *United States v. Anna Mochalova*, 26 Mag. 4522**

Dear Judge Lehrburger:

The Government respectfully submits this letter in support of its request to detain defendant Anna Mochalova pending trial. Mochalova engaged in brazen, targeted, terrifying attacks against Jewish individuals in midtown Manhattan. Notably, this was not Mochalova's first instance of targeting Jewish victims, as she was arrested in June 2025 following a violent act against a Jewish man outside of a yeshiva in Brooklyn. Mochalova also appears to lack any significant ties to this District and does not appear to have a stable residential address. Accordingly, there are no conditions that can reasonably be expected to ensure the safety of the community or assure Mochalova's appearance in court if she were released.

## I. Background

### A. Mochalova's October 21, 2026 Assaults of Jewish Individuals

On or about October 21, 2026, at approximately 5:50 p.m., Victim-1, a Jewish man, was walking along West 47th Street between Fifth and Sixth Avenue when he noticed a white female, subsequently identified as Mochalova, following him and speaking Russian. At the time, Victim-1, who has a beard, was wearing attire traditionally worn by Orthodox Jewish men, including a black hat, a black suit, a white shirt, and tzitzit. As Victim-1 walked past a particular commercial store ("Store-1"), Victim-1 felt Mochalova stab him in his lower back with a sharp object, which he described as the feeling of a needle prick. Victim-1 then observed Mochalova stalk past him towards Sixth Avenue.

Surveillance footage collected from Store-1 depicts Mochalova approach Victim-1 from behind and make a jabbing motion towards Victim-1's back. Victim-1 can be seen flinching away in response to the jabbing motion. Mochalova is then seen moving down the street towards Sixth Avenue, where she takes a left at the corner and heads southbound out of view. A screenshot of the assault is depicted on the following page:



Victim-1 was left bleeding and thereafter was taken to a hospital by ambulance and released later that day.

Shortly after assaulting Victim-1, Mochalova approached Victim-2 and a second man ("Individual-1"), who were standing together on the northeast corner of Sixth Avenue and West 45th Street, approximately two blocks south of the location where Mochalova had assaulted Victim-1. Victim-2 and Individual-1 are also Jewish men, and both were wearing yarmulkes when Mochalova approached. Mochalova bumped into Victim-2 multiple times. As Victim-2 started to confront Mochalova about her repeated bumps, he observed Mochalova stab him with a sharp object on his right forearm. Victim-2, who speaks Russian, recalls that Mochalova spoke in Russian and told him, in sum and substance, "run away, I have a gun." Mochalova also asked Individual-1, in sum and substance, if he was Jewish. Individual-1 responded, in sum and substance, "I don't know, I'm Muslim?" Mochalova told Individual-1 that she "was so sorry" and then fled northbound on Sixth Avenue. Victim-2 also received a small laceration from the incident.

**B. Identification of Mochalova**

On or about October 21, 2026, law enforcement recovered surveillance footage from a second commercial store ("Store-2") on West 47th Street, which depicts the same white female seen in the surveillance footage from Store-1 in greater detail. The surveillance footage depicts the attacker wearing dark clothing with a distinctive dark-and-light patterned bulky jacket (the "Jacket") tied around her waist, as well as a thick silver ring on her left middle finger (the "Ring"). A still image of the footage from Store-2 is depicted on the following page:



On or about October 22, 2026, law enforcement showed Victim-2 a clip of surveillance footage taken from Store-2. The clip depicted multiple individuals walking down the street for a period of time. Law enforcement asked Victim-2 to watch the clip and see if he recognized anyone. Victim-2 identified Mochalova in the clip as his attacker.

On or about October 24, 2026, at approximately 4:30 a.m., Mochalova was arrested by law enforcement for a transit violation in Brooklyn, New York. At the time of her arrest, Mochalova was wearing what appeared to be the Jacket that the attacker was seen wearing on October 21, 2026, the day of the two assaults. Following her arrest, Mochalova told law enforcement agents that her primary language is Russian. When asked for her address, Mochalova provided an address in Brooklyn that was subsequently determined by law enforcement agents to be a nonexistent residential address.

**C. Mochalova's Prior Antisemitic Violence**

Mochalova's assaults of Victim-1 and Victim-2 are not the first time that she has targeted Jewish individuals in New York City. On or about June 18, 2025, Mochalova was arrested for an act of violence against a Jewish person in a Hasidic neighborhood in Brooklyn. At approximately 5:25 p.m., Mochalova approached a 19-year-old Jewish man ("Victim-3") outside of a yeshiva, a traditional Jewish educational institution, on Eastern Parkway in Brooklyn. Mochalova then grabbed Victim-3's cellphone and threw it to the ground, causing damage. In body-worn camera footage of law enforcement agents' response to the incident (the "2025 Footage"), Victim-3 can be seen wearing attire traditionally worn by Orthodox Jewish men, including a yarmulke and tzitzit.

In the 2025 Footage, Mochalova admits that she grabbed Victim-3's phone and threw it, but she claims that she did so after Victim-3 and his friends purportedly laughed and filmed her on their cellphones. Mochalova goes on to explain that she had come to the yeshiva (which she calls a "church") to seek out an individual who had purportedly assaulted her friend's children in

Los Angeles. At multiple points in the 2025 Footage, Mochalova references "the Jewish community," and she grows visibly frustrated as she describes the individuals from "the Jewish community" who she claims laughed at her when she asked them if they knew the individual from Los Angeles.

While being processed following her June 2025 arrest, Mochalova told law enforcement agents that she lived in the Bronx but was only able to remember the specific address after looking it up on her cellphone. When asked by law enforcement agents, Mochalova was unable to provide the information of any emergency contact, and she declined to make any phone calls. Following her arrest, Mochalova provided law enforcement agents with a Russian passport. The arrest report for the June 2025 incident states that Mochalova is not a United States citizen and was born in Russia.

### D. Procedural History

Following her initial arrest on October 24, 2026, Mochalova was arraigned on October 25, 2026 in New York Criminal Court on multiple state felony and misdemeanor charges stemming from the October 21, 2026 assaults. Mochalova was unable to satisfy the substantial bail set in her state case and was remanded to state custody at Rikers Correctional Institution. Earlier today, Mochalova was arrested pursuant to a complaint charging her with two counts of committing hate crimes, in violation of 18 U.S.C. § 249, and she was transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum*. Count One of the Complaint charges the assault against Victim-1, and Count Two charges the assault against Victim-2.

## II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of risk of flight must be supported by a preponderance of the evidence. *See, e.g.*, *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). A finding of dangerousness must be supported by clear and convincing evidence. *See*, *e.g.*, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *Chimurenga*, 760 F.2d at 405.

Each charged count here constitutes a crime of violence as defined in the Bail Reform Act. *See* 18 U.S.C. §§ 3142(f)(1)(A) and 3156(a)(4); *United States v. Howald*, 104 F.4th 732, 742 (9th Cir. 2024) (classifying Section 249 as a crime of violence when considering defendant's motion to dismiss a count charging 18 U.S.C. § 924(c)); *United States v. Sotelo*, 16 Cr. 10062 (JTM), 2016 WL 7373921, at *1 (D. Kan. Dec. 20, 2016) (classifying Section 249 as a crime of violence for bail purposes); *United States v. Hammet*, 13 Cr. 11 (JAM), 2013 WL 1192779, at *3 (E.D. Cal. Mar. 22, 2013) (same). The Court can—and should—consider that the charges include multiple crimes of violence in evaluating the defendant's dangerousness. *See United States v. Balde*, No. 16 CR. 130 (KPF), 2020 WL 1673247, at *3 (S.D.N.Y. Apr. 6, 2020) (noting that in determining

bail, the Court is required to consider, among other things, "whether the offense is a crime of violence").

In determining whether the defendant is entitled to bail, the Court considers the factors set forth in 18 U.S.C. § 3142(g). These factors are: (1) the nature and circumstances of the offense, including whether the offense is a crime of violence; (2) the weight of the evidence against the person; (3) the history and characteristics of the defendant, including the defendant's community ties; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). As set forth below, all four factors weigh heavily against release in this case.

## III. Mochalova Should Be Detained

Based on the facts detailed above—including Mochalova's targeted assaults against Victim-1 and Victim-2 and her apparent animus against "the Jewish community" as revealed in the June 2025 Footage—Mochalova poses a serious danger to the community. If released, there is a significant risk that Mochalova will return to committing acts of violence against Jews and others. And given Mochalova's criminal exposure, the strength of the evidence against her, and her lack of community ties in this District, Mochalova poses a flight risk as well. The Government therefore moves for Mochalova to be detained pending resolution of the charges.

### A. Nature and Circumstances of the Charged Offenses

Critically, Mochalova presents a clear danger to the Jewish community. She is charged with two crimes of violence based on her brazen assaults of innocent Jewish victims. Both of her unprovoked assaults targeted Jews going about their everyday lives in midtown Manhattan, were instigated by Mochalova, and resulted in injury to the victims. These attacks are made all the more terrifying by Mochalova's likely chosen weapon: a sharp object consistent with being a needle. While law enforcement has not yet recovered the item, Victim-1 described the pain as a "sharp prick" similar to a "needle prick." Only moments later, Victim-2 was stabbed with a sharp object that caused a small laceration, consistent with a needle. The existence of any substance within the sharp object is currently unknown.

During both assaults, Mochalova's anti-Semitic motivations were clear: (1) Victim-1, an observant Jew with a beard, was wearing a black hat and suit, with tzitzit sticking out of his pants; (2) Victim-2 and Individual-1, also observant Jews, were wearing yarmulkes when Mochalova approached them; (3) the assault of Victim-1 took place on the city block known as the Diamond District, where many Orthodox Jews, including Hasidic Jews, work; (4) during her assault of Victim-2, Mochalova asked Individual-1 whether he was Jewish; and (5) when Individual-1 lied and stated, in sum and substance, that he was Muslim, Mochalova apologized and fled.

Mochalova's anti-Semitic motivations become even clearer when viewed against the backdrop of her encounter with Victim-3 outside the Brooklyn yeshiva in June 2025. Like Victim-1 and Victim-2, Victim-3 was an observant Jew wearing traditional Jewish male attire,

including a yarmulke and tzitzit. In the 2025 Footage, Mochalova grows visibly frustrated as she mentions "the Jewish community" and describes her perceived slights by Victim-3 and his friends before she threw Victim-3's phone. Moreover, Mochalova's attempt to explain her behavior based on an unrelated assault that purportedly occurred on the opposite side of the country is especially concerning, as it indicates that she may feel justified in targeting Jewish victims with no connection to the alleged perpetrator she describes in the 2025 Footage.

The defendant's repeated violent behavior demonstrates a severe and sustained disregard for the law. Combined with Mochalova's clear anti-Semitic animus, this conduct more than establishes that she is a danger to the community. It is therefore not surprising that judges in this District have consistently detained defendants who commit hate crimes, including against Jewish victims. *See, e.g.*, *United States v. Bazrouk*, 25 Cr. 203 (RMB), Dkt. 16 (detaining defendant who assaulted three Jewish victims on dangerousness and risk of flight grounds); *United States v. Baker*, 26 Cr. 19 (AS), Dkt. 6 (detaining defendant who assaulted two Jewish victims on dangerousness and risk of flight grounds).

## B. Weight of The Evidence

The proof of the charged offenses is overwhelming. Mochalova's assaults were witnessed by many bystanders, including the victims, and the entire assault of Victim-1 is captured on the surveillance footage from Store-1. Mochalova's identity as the attacker of Victim-1 and Victim-2 is further confirmed by: (1) Victim-2's identification of Mochalova as his assailant in surveillance footage showing numerous unrelated individuals walking down the street; (2) Victim-1 and Victim-2's statements that the attacker was speaking in Russian; (3) the fact that Mochalova appeared to be wearing the same Jacket visible in the surveillance footage from Store-2 when she was arrested on October 24, 2026; and (4) the resemblance between the attacker in the surveillance footage from Store-1 and Store-2 and Mochalova as she appears in the 2025 Footage, including what appears to be the same Ring worn by the attacker. Evidence of Mochalova's motivation for conducting the attacks—namely, her anti-Semitic animus—is likewise overwhelming and includes her own statements to Individual-1 during her attack of Victim-2. Accordingly, the weight of the evidence also strongly supports detention.

## C. Mochalova's History and Characteristics

The defendant's history and characteristics also militate powerfully in favor detention. Mochalova's 2025 arrest based on a confrontation with a Jewish victim shows that her conduct in this case is far from an aberration. Moreover, her apparent righteousness—and lack of remorse—in engaging in violent conduct when faced with perceived slights indicates that there is a risk that she will engage in similarly irrational and dangerous behavior in the future. Concerningly, Mochalova's assaults of Victim-1 and Victim-2 reflect an escalation in violence since her confrontation with Victim-3 in 2025, and her prior arrest did not deter her from engaging in the serious crimes of violence at issue in this case.

## D. Danger Posed by Mochalova's Release

The serial nature of Mochalova's assaults demonstrates by clear and convincing evidence that she poses a danger of physically harming others, including those he perceives as Jewish. Her

frustrated statements about "the Jewish community" in the 2025 Footage make clear that her animosity towards Jews is deep-seated and fueled by a misguided belief that she is somehow justified in her violent conduct. In short, given the nature of the defendant's crimes, her repeated engagement in violent, illegal activity, and the fact that her prior arrest failed to deter her, Mochalova presents a clear and present danger to any observably Jewish person who crosses her path. Accordingly, there are no conditions that can reasonably be expected to ensure the safety of the community if she were released.

### E. Mochalova's Risk of Flight

Mochalova should also be detained based on her risk of flight. Mochalova is facing serious criminal charges, and, as described above, the evidence against her is overwhelming. Her potential exposure, including a potentially significant incarceratory sentence, provide her with ample incentive to flee. *See, e.g.*, *United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007) (noting that a defendant's incentive to flee is particularly acute where the evidence against the defendant is strong and the penalties are severe). Mochalova has also shown a willingness to flee, including when she fled the scene of her assault of Victim-2, right after Individual-1 told her that he was Muslim. In addition, Mochalova appears to have very limited ties to this District, as reflected by: (1) her inability to remember her address in the Bronx when she was being processed for her 2025 arrest; (2) the fact that she could not provide any emergency contact when asked by law enforcement agents following her 2025 arrest; and (3) the fact that she provided an apparently fictional address in Brooklyn to law enforcement agents during her arrest processing on October 24, 2026. Under these circumstances, no combination of conditions can ensure that Mochalova will appear for future criminal proceedings in this District as required.

## IV. Conclusion

The Government respectfully submits that, for the reasons stated above, the evidence is sufficient to meet the Government's burden that even the strictest of supervisory conditions cannot protect the community and prevent Mochalova's flight. Accordingly, the Court should order the defendant detained.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: _/s/__________________
Kaiya Arroyo
Christian Ronald
Assistant United States Attorneys